*2000 Utah Ct. App. 36*

**Crelley MACKEY, Plaintiff and Appellant,**

v.

**Chris CANNON, individually; Office of Congressman Chris Cannon; Chris Cannon for Congress, Inc.; CI Group; Cannon Industries, Inc.; and Cannon Engineering Technologies, Inc., Defendants and Appellees.**

**No. 990123–CA.**

Court of Appeals of Utah.

Feb. 17, 2000.

Rehearing Denied March 23, 2000.

Roger H. Hoole and Heather E. Morrison, Hoole & King, LC, Salt Lake City, for Appellant.

Mary Anne Q. Wood and Sheri A. Mower, Wood & Crapo, LLC, Salt Lake City, for Appellees.

Before GREENWOOD, P.J., BENCH, and BILLINGS, JJ.

## OPINION

BENCH, Judge:

¶ 1 Appellant, Crelley Mackey (Mackey), asserts that the trial court erred in granting appellees' motion to dismiss her amended complaint for failure to state a claim upon which relief can be granted. *See* Utah R. Civ. P. 12(b)(6). Mackey argues that post-settlement statements Chris Cannon (Cannon) personally made to reporters for the Salt Lake Tribune breached the parties' settlement agreement and the implied covenant of good faith and fair dealing. Cannon argues that the statements did not violate the agreement because, as a matter of law, they were not prohibited disclosures of confidential information. We reverse and remand.

## BACKGROUND

¶ 2 Because this is an appeal from a motion to dismiss for failure to state a claim, "we accept the factual allegations in the complaint as true and draw all reasonable inferences from those facts in a light most favorable to plaintiff[ ]." *Cruz v. Middlekauff Lincoln–Mercury, Inc.,* 909 P.2d 1252, 1253 (Utah 1996). In any event, the material facts in this matter are not disputed.

¶ 3 In 1997, Mackey, a former field worker for Cannon's congressional office, brought allegations of sexual harassment against Cannon and various entities with which he was associated. The allegations arose out of Mackey's unspecified physical relationship

with Cannon's chief of staff, Charles R. Warren. There were no allegations that Cannon personally harassed Mackey; he was named in the complaint only "because of his duty to oversee his office and employees."

¶ 4 In February 1998, the parties entered into a written settlement agreement (the Agreement) resolving any factual and legal allegations relating to claims and disputes between them. The Agreement contains the following confidentiality provision:

*The parties agree that the factual and legal allegations relating to their claims and disputes arising prior to the date of this Settlement Agreement shall be confidential* and that they shall not disclose to any third party that confidential information, the terms of the settlement or the amount of the payments made under the Settlement Agreement, except ... (c) to disclose on Monday, February 9, 1998 that "Ms. Mackey's claims ... have been resolved to the Parties' satisfaction"; (d) thereafter, if pressured by the media, to disclose (after first having spoken with Roger H. Hoole), that "Ms. Mackey's claims ... have been resolved to the Parties' satisfaction by settlement without any admission of liability, or payment of monies from Chris Cannon or the use of tax dollars, and that Ms. Mackey has voluntarily resigned her position as Field Coordinator in the Provo Office of Chris Cannon in order to accept employment with the Utah Legislature effective February 1, 1998"; and (e) thereafter, if further pressured by the media and asked specifically whether the Cannon Entities or individuals contributed money to the settlement, Mr. Cannon or his representatives may respond (after having spoken with Roger H. Hoole) that "no Cannon entities or campaign contributed to any settlement." *Other than as specifically allowed herein, the Parties and their attorneys shall not volunteer any confidential information, and in response to any request for information by any person or entity shall say only "no comment."*

(Emphasis added.) In sum, the confidentiality provision of the Agreement provides that the factual and legal allegations, the terms of the settlement, and the amount paid thereunder, shall be confidential. It also provides that, subject to the very narrowly defined exceptions, confidential information shall not be disclosed to third parties, and that any further requests for information shall be met with a "no comment" response.

¶ 5 Exceptions (a) and (b) do not relate to this appeal nor to the underlying action. Statements in conformity with exception (c) were released to the media on February 9, 1998, and were reported in local newspapers on February 10 and 11, 1998. As the result of media pressure, statements in conformity with exception (d) were released to the media and reported in at least one newspaper on February 11, 1998. This leaves only exception (e) and the "no comment" requirement for consideration in this appeal.

¶ 6 Mackey's amended complaint alleges that on April 15, 1998, Cannon and certain members of his congressional staff met with three reporters at the Salt Lake Tribune, and that Cannon "made a number of voluntary statements and expressed certain opinions, which statements and opinions comprise 'factual and legal allegations relating to [the parties'] claims and disputes,' " in violation of the "express prohibition of the settlement agreement against a party's post-settlement disclosure of mooted factual and legal allegations." The amended complaint asserts that Cannon made the following prohibited statements:

(1) That [Mackey] has the ability to waive confidentiality;

(2) that they are not holding her to confidentiality;

(3) that although she is free to discuss it, there would be no benefit for her to talk about it publicly;

(4) that there was no impropriety on Mr. Cannon's part;

(5) that no hostile environment existed in Mr. Cannon's office;

(6) that there was nothing to Ms. Mackey's allegations;

(7) that Ms. Mackey's allegations had no merit; and

(8) that her allegations wouldn't have held up.

Some of the above statements appeared the following day in a Tribune article entitled "Cannon Talks on Sex Case." The article provides, in relevant part:

> "No entity associated with me paid a nickle," Cannon said Wednesday. "There was no impropriety on my part and no hostile environment. Nothing came home to roost." Cannon previously had declined to discuss details of the settlement in February with his former field coordinator Crelley Mackey.
>
> He made the comments Wednesday as an apparent attempt at political self-inoculation in light of expected scrutiny [in connection with his role in deciding] whether to initiate impeachment proceedings against President Clinton.
>
> . . . .
>
> Cannon said he did not consider Mackey bound by confidentiality.
>
> "We're willing to give her latitude to express whatever she wants about this," said the congressman. "We don't want her maligning me personally. But she has the ability to waive confidentiality on this. There's nothing I'm holding her to confidentiality on."
>
> However, Cannon said he believed Mackey would remain silent.
>
> "There are a lot of reasons for her not to speak with anybody about this," Cannon said. "They are up to her—you can figure those out or ask her."
>
> Mackey's attorney, Roger Hoole, declined comment Wednesday.

Dan Harrie, *Cannon Talks on Sex Case*, Salt Lake Tribune, April 16, 1998, at B–1.

¶ 7 After the meeting on April 15, 1998—and before publishing the article the next day—the Tribune reporter called Mackey's attorney, Mr. Hoole. The reporter informed Hoole that Cannon volunteered the above statements, and then asked if Hoole had any response to the statements. Hoole said, "All I can say is that the matter was resolved to the parties' satisfaction."

¶ 8 Mackey brought the underlying action on April 16, 1998—the very day the article appeared in the Tribune. Cannon moved to dismiss the action under Rule 12(b)(6), Utah

Rules of Civil Procedure. After a hearing, the trial court granted Cannon's motion. The trial court concluded, as a matter of law, that none of the eight statements breached the confidentiality provision of the Agreement. In reaching its conclusion, the trial court went behind the bare allegations of the amended complaint and considered each of the eight statements, comparing them to the language of the confidentiality provision of the Agreement. This appeal followed.

## STANDARD OF REVIEW

 ¶ 9 When reviewing a motion to dismiss based on Rule 12(b)(6), an appellate court must accept the material allegations of the complaint as true, and the trial court's ruling should be affirmed only if it clearly appears the complainant can prove no set of facts in support of his or her claims.

*Anderson v. Dean Witter Reynolds, Inc.*, 841 P.2d 742, 744 (Utah Ct.App.1992). "A dismissal is a severe measure and should be granted by the trial court only if it is clear that a party is not entitled to relief under any state of facts which could be proved in support of its claim." *Colman v. Utah State Land Bd.*, 795 P.2d 622, 624 (Utah 1990). Additionally, we "must consider all the reasonable inferences to be drawn from the facts in a light most favorable to the plaintiff." *Anderson*, 841 P.2d at 744. "The propriety of a trial court's decision to grant or deny a motion to dismiss under rule 12(b)(6) is a question of law that we review for correctness." *Cruz*, 909 P.2d at 1253.

## ANALYSIS

¶ 10 The factual basis of Mackey's complaint is not contested. In fact, Cannon does not dispute the material factual allegations of Mackey's complaint, which are as follows: (1) the parties entered into the Agreement on February 9, 1998; (2) the Agreement contains a confidentiality provision; (3) Cannon and certain members of his congressional staff met with Tribune reporters on April 15, 1998; (4) Cannon made the eight statements outlined above; and (5) some of these state-

ments appeared in a Tribune article the following day.

■ ¶ 11 In short, the dispute involves whether the statements Cannon voluntarily made to the Tribune violate the confidentiality provision, thereby breaching the Agreement. Mackey asserts that these statements constitute "factual and legal allegations," the disclosure of which violates the confidentiality provision. Cannon argues that the statements were: (1) permissible under the exceptions in the confidentiality clause; (2) already made public, and thus cannot be deemed confidential; or (3) merely "generic statements," "conclusory statements," or "opinion."

■ ¶ 12 The material factual allegations in this case, particularly the existence and nature of the comments made, are undisputed by Cannon. Construing the facts and all inferences therefrom in Mackey's favor, as we must do, it is conceivable that Mackey, upon being allowed the opportunity to develop and prove her case, can demonstrate that the statements violate the confidentiality provision of the Agreement. "The courts are a forum for settling controversies, and if there is any doubt about whether a claim should be dismissed for the lack of a factual basis, the issue should be resolved in favor of giving the party an opportunity to present its proof." *Colman*, 795 P.2d at 624. On the facts alleged, Mackey must be given "an opportunity to present [her] proof." *Id.*

■ ¶ 13 A motion to dismiss is properly granted only in cases in which, even if the "factual assertions in the complaint were correct, they provided no legal basis for recovery." *Lowe v. Sorenson Research Co., Inc.*, 779 P.2d 668, 670 (Utah 1989). In other words, dismissal in this case would have been appropriate if Mackey had, for example, not alleged sufficient facts to meet all the elements of a breach of contract claim. Mackey, however, alleged facts concerning each element of the claim of breach of contract,

i.e., existence of a contract, performance by her, nonperformance by Cannon, and damages. Hence, the trial court erred in dismissing Mackey's case because she alleged sufficient facts to survive a motion to dismiss.

■ ¶ 14 Moreover, some of the eight statements are arguably "factual and legal allegations relating to [the parties'] claims." Cannon's assertion that his statements are simply "generic" or "opinion" does not insulate him from the confidentiality provision of the Agreement. Cannon's narrow reading of the confidentiality provision would vitiate the Agreement and allow him to make virtually any statement he wanted, so long as he called it "opinion," or so long as he believed the comment was sufficiently "generic" or was simply a "conclusory statement." The confidentiality provision itself makes no allowance for opinion or generalized statements concerning the matter. The confidentiality provision was obviously intended to put the entire dispute to rest. Mackey has therefore sufficiently pleaded her claims, and she is entitled to her day in court.

■ ¶ 15 Finally, Cannon argues that some or all the statements are mere repetitions of statements already made public, and thus cannot be considered "confidential." Previous press coverage or other prior disclosure of some information may actually be irrelevant in this case because the Agreement makes no exception for continued disclosure or discussion of matters previously disclosed. In any event, whether the statements are mere repetitions of material already made public presents a factual question not appropriately resolved in a motion to dismiss.[1]

## CONCLUSION

¶ 16 Under the factual allegations of this case, which are undisputed by Cannon,

---

1. Neither of Mackey's causes of action are typically resolved as a matter of law. *See, e.g., Cook v. Zions First Nat'l Bank,* 919 P.2d 56, 61 (Utah Ct.App.1996) (stating "whether there has been a breach of good faith and fair dealing is a factual issue, generally inappropriate for decision as a matter of law"); *Olympus Hills Ctr., Ltd. v. Smith's Food,* 889 P.2d 445, 458 (Utah Ct.App. 1994) ("Whether a party has materially breached a [contract] is generally a question of fact for the fact finder.").

Mackey has stated claims for breach of contract and breach of the duty of good faith and fair dealing. She is therefore entitled to proceed with her case.

¶ 17 Accordingly, we reverse the trial court's grant of the motion to dismiss and remand the case for further proceedings.

¶ 18 WE CONCUR: PAMELA T. GREENWOOD, Presiding Judge, and JUDITH M. BILLINGS, Judge.