2005 UT App 327.

**Ray OKELBERRY, Plaintiff, Appellee, and Cross-appellant**

v.

**WEST DANIELS LAND ASSOCIATION, Defendant, Appellant, Cross-appellee.**

No. 20030389–CA.

Court of Appeals of Utah.

July 21, 2005.

Wade R. Budge, Bradley R. Cahoon, and Peter H. Donaldson, Snell & Wilmer, Salt Lake City, for Appellant.

Don R. Petersen and Ryan D. Tenney, Howard Lewis & Petersen, Provo, for Appellee.

Before Judges DAVIS, GREENWOOD, and ORME.

OPINION

GREENWOOD, Judge:

¶ 1 This case involves a dispute between Defendant West Daniels Land Association (the Association), a nonprofit corporation, and one of its shareholders, Plaintiff Ray Okelberry, over the Association's decision to lease Association-owned land to a nonshareholder. The Association appeals the trial court's ruling, following a bench trial, awarding Plaintiff damages for breach of fiduciary duty by the Association. Plaintiff cross-appeals the trial court's dismissal of his claim for declaratory judgment that ownership of livestock and a grazing permit are preconditions to ownership of Association stock. We affirm the trial court's ruling against the Association, albeit on other grounds, and hold that the Association is liable to Plaintiff for breach of contract. We also affirm the trial court's dismissal of Plaintiff's declaratory judgment claim.

BACKGROUND

¶ 2 The Association was incorporated in Utah in 1952 as a nonprofit corporation under the Utah Revised Nonprofit Corporation Act (the Act), see Utah Code Ann. §§ 16–6a–101 to –1705 (2001).[1] According to the Affidavit of Incorporation (the Articles), the Association was to "exist for ninety-nine years from the date of incorporation for the purpose to hold and own and manage grazing land for the purpose of grazing animals as shall be determined by the board of directors." The Articles also provided that "two shares were to be issued for each head

of livestock." There are 1390 Association shares outstanding.[2]

¶ 3 Pursuant to their corporate charter, the Association acquired 5200 acres of land on which members could graze their livestock. For many years, the Association-owned land was used for grazing in conjunction with adjoining United States Forest Service (Forest Service) lands. Permits to use the Forest Service lands were either owned outright by shareholders of the corporation or were held by the Association in a pooling arrangement.[3]

¶ 4 In August 1997, the Forest Service cancelled a 160–head grazing permit owned by the Association. As a result, the Association members voted in February 1998 to create two herds, one herd to go onto the Forest Service land and one herd to remain on Association land. Plaintiff, then president of the Association, voted against the creation of two herds, but the motion passed by the vote of a majority of shareholders. This vote prompted Plaintiff's filing of the instant lawsuit in April 1999, wherein Plaintiff requested declaratory judgment and monetary damages for disputes over corporate voting rights and property decisions.

¶ 5 After commencement of this litigation, the Association's board of directors (the Board) decided to prohibit shareholders, including Plaintiff, from grazing on the Association's land during 2000 and 2001. Further, in February 2002, the Association voted at its annual meeting to lease its land to a nonshareholder "for the purposes of generating money to pay expenses." The Association

---

1. Although the Association was incorporated in 1952, and the Act was not enacted until 2001 (although a previous version was enacted in 1963, see Reedeker v. Salisbury, 952 P.2d 577, 584 (Utah Ct.App.1998)), the Association is subject to the Act through section 16–6a–1701(1)(a), which provides that "this chapter applies to domestic nonprofit corporations ... in existence on April 30, 2001, that were incorporated under any general statute of this state providing for incorporation of nonprofit corporations." Utah Code Ann. § 16–6a–1701(1)(a) (2001). Neither party disputes the Act's applicability.

2. The Association also adopted bylaws (the Bylaws) to further clarify and govern its corporate

affairs. Article III of the Bylaws provides that any entity "holding a permit to graze cattle on [Association-owned land] may become a permittee member of the Association." Article IV of the Bylaws restricts service as an officer or board member in the Association to permit holders, and Article XIII of the Bylaws allows only permittee members in good standing to vote.

3. The pooled permits were actually held in the name of West Daniels *Cattle* Association. However, the trial court found that this entity and the Association were one and the same, a finding that neither party challenges.

advertised the property in several periodicals and awarded the lease to the highest bidder.[4]

¶ 6 Plaintiff filed an amended complaint in January 2001, pleading two causes of action: (1) declaratory relief, and (2) breach of contract. In his claim for declaratory relief, Plaintiff alleged that the ability to own shares in the Association was conditioned upon ownership of both cattle and Forest Service permits. Accordingly, Plaintiff sought a judgment determining qualifications for membership in the Association, the amount of shares held, and an order transferring shares held by nonpermit owning members to members who still held permits.

¶ 7 In his action for breach of contract, Plaintiff alleged that Association membership gave him a contractual right to "run his cattle on the Association's private land," and that "[t]he Association has prohibited this action by illegal and/or improper vote." Plaintiff filed suit directly, not derivatively.

¶ 8 The trial court dismissed the majority of Plaintiff's claims for declaratory relief before trial.[5] A bench trial was held on Plaintiff's claims for breach of contract and mismanagement of corporate assets (paragraph 33 of the declaratory relief claim). The trial court ruled against Plaintiff for the 1998–2001 period because, in 1998, Plaintiff was allowed to graze his cattle on Association land; in 1999, Plaintiff chose not to graze; and in 2000 and 2001, the Board forbade anyone from grazing on the land in order to rest it, which, under the Bylaws, was within its management powers. However, the trial court ruled that

> [t]he solicitation of bids for the year 2002 by the Board ... was a breach of its

fiduciary duty. The directors had a duty to look after the best interests of the shareholders[,] ... a fiduciary duty to use the private property in the best interest of the shareholders[,] and to promote the purpose of the corporation which is to provide grazing land for livestock owned by shareholders.

Additionally, the trial court concluded that "[t]here was a breach of the obligation of the management of [the Association] with respect to [Plaintiff]. The Court concludes that [P]laintiff is entitled to damages for the breach of the duty owed to him." Accordingly, the trial court awarded Plaintiff $13,716 in damages and prohibited any similar future leases of the land or sale of the land absent either two-thirds shareholder approval or amendment of the Bylaws.

¶ 9 Following this decision, the Association moved for a new trial under rule 59 of the Utah Rules of Civil Procedure. *See* Utah R. Civ. P. 59. That motion was denied. This appeal followed with both parties appealing adverse rulings.

## ISSUES AND STANDARD OF REVIEW

¶ 10 The Association argues that the trial court erred in ruling that the Association breached its fiduciary duty to Plaintiff by leasing Association-owned land to a non-shareholder because (1) this action was protected by the business judgment rule; (2) claims for breach of fiduciary duty must be brought derivatively, while Plaintiff brought suit directly; and (3) the trial court failed to make sufficient factual findings to support its conclusion that the Association breached its fiduciary duty.[6] We need not consider the

---

4. Shareholders were permitted to bid for the lease themselves, however, it was first advertised to the public. Plaintiff testified that he did not bid for the lease because, as a member of the Association, he already had a right to use the land.

5. One paragraph of Plaintiff's declaratory relief claim—paragraph 33—survived the trial court's ruling, wherein Plaintiff requested a judgment declaring "the assets of the [Association] are owned by the corporation and cannot be used solely by some of the members of the Association." The trial court ruled that this presented a triable issue of fact.

6. It is unclear at what point the Association's fiduciary duties to Plaintiff became an issue in this case. Breach of fiduciary duty was not pleaded or raised in the pretrial motions of either party, and the word index to the trial transcript indicates that "fiduciary" was mentioned only twice, both times by the trial court—once during the Association's closing argument, and again while the trial court was ruling on the case from the bench. This sua sponte action has caused most of the difficulty in this case, and is the basis for the Association's second and third arguments for reversal on appeal.

Nevertheless, the action that the trial court concluded was a breach of fiduciary duty—the

sufficiency of the trial court's determination that Plaintiff was entitled to recovery for breach of fiduciary duty, however, because we conclude that Plaintiff was entitled to relief for breach of contract.[7]

¶ 11 It is well established that we may affirm the judgment appealed from

> "if it is sustainable on any legal ground or theory apparent on the record, even though such ground or theory differs from that stated by the trial court to be the basis of its ruling or action, and this is true even though such ground or theory is not urged or argued on appeal by appellee, was not raised in the lower court, and was not considered or passed on by the lower court."

*Bailey v. Bayles*, 2002 UT 58, ¶ 10, 52 P.3d 1158 (quoting *Dipoma v. McPhie*, 2001 UT 61, ¶ 18, 29 P.3d 1225). The goal of the "affirm on any ground" rule is judicial economy. *See Bailey*, 2002 UT 58 at ¶ 13 n. 3, 52 P.3d 1158.

¶ 12 This case is appropriate for affirmance on alternative grounds. As will be discussed in detail in the next section, our breach of contract determination is based on the Association acting outside of the Articles by leasing the Association-owned land to a nonshareholder, which prevented Plaintiff from using this land to graze his cattle—the same action the trial court concluded was a breach of fiduciary duty. Although Plaintiff did not complain that this action amounted to a breach of the Association's fiduciary duty, he did assert that it was a wrong for which he was entitled to relief.[8] More importantly, regardless of the legal theory pursued, the question of whether the Association contravened the Articles by leasing its land to a nonshareholder and the damages this action caused to Plaintiff clearly were issues at trial. This is amply represented in the record, with both sides addressing the issues during opening statements, through witness testimony, and during closing arguments. Therefore, because we may affirm on any ground "apparent on the record" even though "not raised in the lower court," *see id.* at ¶ 10 (quotations and citation omitted), Plaintiff's failure to clearly plead his theory of relief is not fatal, as we conclude that the record indicates Plaintiff is entitled to relief for breach of contract.[9]

---

lease of the Association-owned land to a non-shareholder in contravention of the Articles—was thoroughly discussed during the trial as a wrong committed by the Association for which Plaintiff demanded relief, permitting us to affirm on other grounds.

7. Contrary to arguments in Plaintiff's brief, at oral argument Plaintiff's counsel abandoned its position that the trial court did not err in holding that the Association breached its fiduciary duties to Plaintiff. Counsel also conceded that failure to bring a derivative action defeated the breach of fiduciary duty claim. Consequently, counsel urged this court to decide this case on the more straightforward breach of contract theory that was actually tried.

8. Plaintiff's breach of contract claim in his amended complaint does not refer to the Association's lease of the Association-owned land to a nonshareholder in 2002 because the amended complaint was filed in 2001, and was never amended to include this action. At trial, the parties were also initially uncertain about which of Plaintiff's causes of action the 2002 lease fell under, but, appeared to concede that paragraph 33 of Plaintiff's amended complaint covered this "misuse of corporate assets."

9. We also note that affirming for breach of contract ameliorates most of the procedural mala-dies afflicting this case. Breach of contract claims may be brought against a corporation directly rather than derivatively. *See Richardson v. Arizona Fuels Corp.*, 614 P.2d 636, 639 (Utah 1980) (observing a direct action is appropriate when " 'the injury is one to the plaintiff as a stockholder and to him individually, and not the corporation, as where the action is based on a contract to which he is a party.' " (quoting 13 William Meade Fletcher, *Cyclopedia of the Law of Private Corporations* § 5911 (1970))); *see also DLB Collection Trust v. Harris*, 893 P.2d 593, 596 (Utah Ct.App.1995) ("[A] shareholder may pursue a claim when the wrongful acts are *not only* against the corporation, but are also violations of a duty arising from a contract or otherwise, and owed directly to the shareholder." (emphasis added)). Additionally, although the trial court must find either intentional infliction of harm or wilful misconduct by a director to support a conclusion that the Association breached its fiduciary duty, *see* Utah Code Ann. § 16-6a-822(6) (2001); *Reedeker v. Salisbury*, 952 P.2d 577, 589 (Utah Ct.App.1998) (dismissing a suit for breach of fiduciary duty without the plaintiff alleging "intentional misconduct"), no such finding needs to be made to support a breach of contract ruling.

¶ 13 Plaintiff, on cross-appeal, argues that the trial court erred in dismissing his claim for declaratory judgment by ruling that the provisions in the Bylaws requiring members of the Association to own valid grazing permits conflicted with the Articles and were, therefore, invalid. "The propriety of a trial court's decision to grant or deny a motion to dismiss under rule 12(b)(6) is a question of law that we review for correctness." *Mackey v. Cannon*, 2000 UT App 36, ¶ 9, 996 P.2d 1081 (quotations and citation omitted).

## ANALYSIS

### I. Breach of Contract

¶ 14 " 'It is well established precedent that the bylaws of a corporation, together with the articles of incorporation, the statute under which it was incorporated, and the member's application, constitute a contract between the member and the corporation.' " *Reedeker v. Salisbury*, 952 P.2d 577, 582 (Utah Ct.App.1998) (quoting *Turner v. Hi–Country Homeowners Ass'n.*, 910 P.2d 1223, 1225 (Utah 1996)) (additional quotations and citation omitted); *see also* 12A William Meade Fletcher, *Cyclopedia of the Law of Private Corporations* § 5690 (2001) (noting "the articles of incorporation and bylaws of a nonprofit corporation are generally considered to be a form of contract between the corporation and its members and among the members themselves," and "[s]igning the constitution and bylaws of a [nonprofit] corporation . . . constitutes the making of a valid contract of membership between the signer and the corporation, supported on each side by sufficient consideration."). " '[B]ecause the Association is a corporation, it may not act in any way not authorized in its . . . articles of incorporation or bylaws.' " *Reedeker*, 952 P.2d at 582 (alteration omitted) (quoting *S & T Anchorage, Inc. v. Lewis*, 575 So.2d 696, 698 (Fla.Dist.Ct.App.1991)).

"[F]ailure of an association to abide by the terms of the contract exposes that association to contract liability." *Id.*

¶ 15 "In the interpretation of a contract, the parties' intentions are controlling." *Turner*, 910 P.2d at 1225. "If the contract is in writing and its language is not ambiguous, the parties' intentions should be determined from the words of the agreement." *Id.* at 1225–26.

¶ 16 Applying these principles to the case at bar, we conclude that the Association breached its contract with Plaintiff, a shareholder and member of the Association. Under the Articles, the Association was incorporated "for the purpose to hold and own and manage grazing land for the purpose of grazing animals as shall be determined by the board of directors." The trial court interpreted this provision as requiring the Association "to provide grazing lands for *the livestock owned by shareholders.*" (Emphasis added.) We agree with the trial court. It is apparent from the trial court's findings of fact and the record that the members' intent in forming the Association was to obtain grazing land for their own livestock.[10] This interpretation is consistent with the prior practice of the Association, which has held the land for grazing only by shareholders since its inception. *See Summit Range & Livestock Co. v. Rees*, 1 Utah 2d 195, 265 P.2d 381, 383 (1953) (considering the corporation's "practice from [its] inception" to be important in interpreting its charter); *cf. Upland Indus. Corp. v. Pacific Gamble Robinson Corp.*, 684 P.2d 638, 642 (Utah 1984) (" 'A construction given to [a contractual provision] by the acts and conduct of the parties with knowledge of its terms, before any controversy has arisen as to its meaning, is entitled to great weight, and will, when reasonable, be adopted and enforced by the court.' " (citation omitted)). Furthermore, no

---

10. Although the Association claims on appeal that "[n]othing in the Bylaws or Articles require[s] that the grazing lands be used by Association members," during the proceedings before the trial court, the Association seemed to concede this point. For example, during the hearing on its motion for a new trial, the Association agreed that it was created for the grazing "of livestock owned by the shareholders." Indeed, the Association's primary contention at trial seemed to be that despite the fact that the Association was created for the purpose of providing grazing lands to shareholders, the lease of the land to a nonshareholder was consistent with the Articles and within the Board's power under Article VIII of the Bylaws "to transact the general business of the corporation."

other interpretation makes sense because, due to the nonprofit nature of the Association, the sole benefit a shareholder derives from membership is the right to use Association-owned land to graze livestock. By leasing all of its land to a nonshareholder, the Association has prevented Plaintiff, and all other Association shareholders, from using the land to graze livestock. Accordingly, the Association has acted contrary to the limited purpose for which it was incorporated, as expressed in the Articles, and is therefore liable to Plaintiff for breach of contract.

¶ 17 A review of our jurisprudence surrounding mutual water companies bolsters this conclusion.

> Historically[,] mutual water companies came into existence as private corporations organized to enable persons who owned water from a common source to unite in a nonprofit, cooperative enterprise to transport their respective portions of the water for their use. They exchanged the water rights for shares of stock; each receiving shares in the water, and in the corporate property, proportional to his ownership of the total water. It was deemed that the corporation held title for the shareholder as trustee.

*Park v. Alta Ditch & Canal Co.*, 23 Utah 2d 86, 458 P.2d 625, 627 (1969) (footnotes omitted). "[I]n certain cases[,] . . . the corporation has no power to make a conveyance which would divest the shareholder of his water rights." [11] *Id.* The rationale for this rule is that "the stock certificate [of a mutual company] is not like the stock certificate in a company operated for profit. It is really a certificate showing an undivided part owner-

ship in a certain water supply. It embraces the right to call for such undivided part. . . ." *Genola Town v. Santaquin City*, 96 Utah 88, 80 P.2d 930, 936 (1938).

¶ 18 Although not perfectly analogous, the Association is similar to a mutual water company in that the shareholders pooled resources to purchase land for the grazing of livestock, exchanging their ownership interests in that land for shares of the corporation. As in *Park*, the Association is empowered to take any action consistent with the Articles, provided such actions permit the shareholders use of the land for grazing. *See Park*, 458 P.2d at 628 ("[T]he corporation should have the powers expressly given [by its articles of incorporation] and those that are necessarily implied in order to enable it to efficiently and effectively carry on the purposes for which it is created."). For example, under the Articles, the Association has the power to "manage grazing land," which includes all actions amounting to husbandry of the land, such as resting the land (as the Association did in 2000 and 2001), constructing a fence, or imposing other grazing restrictions upon members. However, as in the traditional mutual water company, the Association "has no power to make a conveyance divesting the shareholders" of their grazing rights,[12] *id.*, because, as provided above, the Articles contractually bind the Association to "provide grazing land for the livestock owned by shareholders." Therefore, by leasing its land to a nonshareholder, the Association has deprived Plaintiff of the benefits of stock ownership and breached its contract with Plaintiff, for which Plaintiff is entitled to damages.[13]

---

11. For this proposition, the Utah Supreme Court in *Park v. Alta Ditch & Canal Co.*, 23 Utah 2d 86, 458 P.2d 625 (1969), cited 3 Clesson S. Kinney, *Irrigation & Water Rights* § 1487 (2d ed.1912); *St. George City v. Kirkland*, 17 Utah 2d 292, 409 P.2d 970, 972 (1966); *Smithfield West Bench Irrigation Co. v. Union Central Life Ins. Co.*, 105 Utah 468, 142 P.2d 866, 869 (1943); and *Genola Town v. Santaquin City*, 96 Utah 88, 80 P.2d 930, 936 (1938). *See Park*, 458 P.2d at 627 n. 5.

12. The Association claims that Utah Code section 16-6a-302(2)(e) grants them the power to sell or lease any of its property. *See* Utah Code Ann. § 16-6a-302(2)(e) (2001). However, this claim fails because the lead-in language to section 302

expressly conditions this power: "Unless its articles of incorporation provide otherwise. . . ." *Id.* § 16-6a-302. Here, the Articles provide otherwise.

13. It is implicit in our ruling today that future conveyances of the Association-owned land in violation of the Articles are prohibited. However, the Association can amend the Articles pursuant to Utah Code sections 16-6a-1001 through 16-6a-1014, *see* Utah Code Ann. §§ 16-6a-1001 to -1014 (2001), including amendment that would terminate, redeem, or cancel membership. *See id.* § 16-6a-1014. The decision to lease the Association-owned land to a nonmember, howev-

¶ 19 We also affirm the damages of $13,716 awarded to Plaintiff—$10,230 for the additional feed Plaintiff was required to purchase and $3,486 for shrinkage of his herd. A shareholder may recover directly from the corporation for breach of contract. *See Richardson v. Arizona Fuels Corp.*, 614 P.2d 636, 639 (Utah 1980). On appeal, the Association has not challenged the award itself as being erroneous, only the trial court's determination of liability. Furthermore, although these damages were awarded for breach of fiduciary duty, we find that they are also an appropriate award for the Association's breach of contract because: (1) both conclusions are based on the same incident—the Association's lease of its land to a nonshareholder; and (2) the damages are compensatory only, making them appropriate for breach of contract. *See Anesthesiologists Assocs. v. St. Benedict's Hosp.*, 884 P.2d 1236, 1238 (Utah 1994) ("Damages awarded for breach of contract should 'place the nonbreaching party in as good a position as if the contract had been performed.' " (citation omitted)).

¶ 20 Accordingly, we affirm the judgment against the Association and the damages awarded to Plaintiff on the alternative ground that the Association breached its contract with Plaintiff.[14]

## II. Cross–Appeal

¶ 21 Plaintiff argues that the trial court erred in denying his claim for declaratory judgment that, under the Articles, the ability to continue to be a shareholder in the Association is expressly tied to the right to run cattle, which, in turn, is contingent on the ownership of a Forest Service permit. The trial court dismissed this claim under rule 12(b)(6) of the Utah Rules of Civil Procedure because no reading of the Articles would permit such an interpretation, and to the extent that the Bylaws indicate a contrary interpretation, they are void. We agree.

¶ 22 "The propriety of a trial court's decision to grant or deny a motion to dismiss under rule 12(b)(6) is a question of law that we review for correctness." *Mackey v. Cannon*, 2000 UT App 36,¶ 9, 996 P.2d 1081 (quotations and citation omitted).

¶ 23 Plaintiff argues that the provision of the Articles stating "two shares shall be issued for each head of livestock," expressly ties the amount of stock a shareholder may own to the number of cattle the shareholder owns for grazing on the Association land. We disagree.

¶ 24 "If the contract is in writing and its language is not ambiguous, the parties' intentions should be determined from the words of the agreement." *Turner v. Hi–Country Homeowners Ass'n.*, 910 P.2d 1223, 1225–26 (Utah 1996). The plain language of this provision ties only the amount of stock the Association initially issued to the amount of livestock owned. The Articles include the names of the original shareholders and the number of shares each owns. However, the Articles include no requirement that shareholders must continue to graze or own cattle or have federal grazing permits. A plain reading of the Articles, therefore, undermines Plaintiff's contention. Moreover, under Plaintiff's interpretation, every time cattle die or are sold, the shareholder would lose shares, and every time a calf is born, the shareholder would gain shares. The corporate secretary would be voiding and issuing shares on a daily basis. We may not endorse such an absurd interpretation. *See The View Condo. Owners Ass'n v. MSICO, L.L.C.*, 2004 UT App 104,¶ 28 n. 1, 90 P.3d 1042 (refusing to interpret a contract in a manner that "could potentially create absurd results."). Therefore, we affirm the trial court's dismissal of Plaintiff's declaratory judgment claim.

## CONCLUSION

¶ 25 In sum, we affirm the trial court's judgment against the Association on the al-

---

er, was not consistent the Articles as written and thus was not authorized.

14. The Association also argues that the trial court abused its discretion in denying its motion for a new trial under rule 59 of the Utah Rules of Civil Procedure. "In deciding whether to grant a new trial, the trial court has some discretion, and we reverse only for abuse of that discretion." *Crookston v. Fire Ins. Exch.*, 817 P.2d 789, 799 (Utah 1991). Because we conclude that Plaintiff was entitled to judgment against the Association, the trial court did not abuse its discretion by denying the Association's motion.

ternative ground that the Association breached its contract with Plaintiff by leasing its land to a nonshareholder, thereby preventing Plaintiff from grazing his livestock on the land. Additionally, we affirm the damages awarded to Plaintiff. Finally, we affirm the trial court's dismissal of Plaintiff's claim for declaratory relief because the Articles do not condition stock ownership on the amount of cattle the shareholder is grazing on Association-owned land at any given moment.

¶ 26 WE CONCUR: JAMES Z. DAVIS and GREGORY K. ORME, Judges.