2006 UT App 340

**Nicholas SORENSEN, Kevin Sorensen, and Pamela Sorensen, limited guardians and conservators of Nicholas Sorensen, Plaintiffs and Appellants,**

v.

**John P. BARBUTO, individually; and John P. Barbuto, M.D., P.C., dba Neurology In Focus, Defendants and Appellees.**

No. 20050501–CA.

Court of Appeals of Utah.

Aug. 10, 2006.

L. Rich Humpherys and Karra J. Porter, Christensen & Jensen, PC, Salt Lake City, for Appellants.

Dennis C. Ferguson, Williams & Hunt, Salt Lake City, for Appellees.

Before BENCH, P.J., BILLINGS, and ORME, JJ.

## OPINION

BENCH, Presiding Judge:

¶ 1 Nicholas Sorensen (Sorensen) and his limited guardians, Kevin and Pamela Sorensen, appeal the trial court's order granting Dr. John P. Barbuto's (Barbuto) motion to dismiss. We affirm in part and reverse in part.

## BACKGROUND [1]

¶ 2 In 1999, Sorensen sustained serious back and head injuries as a passenger in

---

1. "Because this is an appeal from a motion to dismiss for failure to state a claim, we accept the

a single-automobile accident. Over the next year and a half, Barbuto treated Sorensen for head injuries and seizures. The treatment included diagnostic examinations, prescriptions for medicine, and cognitive therapy. When Sorensen's medical insurer removed Barbuto from its approved providers list, Sorensen terminated his physician-patient relationship with Barbuto and continued his treatment with another physician.

¶ 3 Sorensen then filed a personal injury action against the driver's liability insurer (the personal injury action). In that action, Barbuto produced Sorensen's medical records, and the trial court admitted the records as stipulated evidence. Defense counsel subpoenaed Barbuto for trial, which was initially scheduled for May 2003. The court later postponed the trial until October. Between May and October, Barbuto engaged in ex parte communications with defense counsel, prepared a ten-page report for defense counsel's use, and agreed to testify as an expert witness for the defense. Contrary to his earlier diagnosis, Barbuto asserted that psychological and social factors contributed to Sorensen's medical injuries.

¶ 4 Sorensen first learned about Barbuto's ex parte communications with defense counsel during a deposition of another witness. Consequently, Sorensen's counsel deposed Barbuto and filed an emergency motion in limine. The trial court excluded Barbuto's testimony, and Sorensen prevailed in the personal injury action.

¶ 5 Subsequently, Sorensen filed this action against Barbuto. In this complaint, Sorensen asserts breach of contract and various tort causes of action based on Barbuto's ex parte communications with defense counsel. Barbuto filed a rule 12(b)(6) motion to dismiss. *See* Utah R. Civ. P. 12(b)(6). The trial court granted the motion to dismiss, and Sorensen now appeals.

## ISSUE AND STANDARD OF REVIEW

▮▮▮ ¶ 6 Sorensen asserts that the trial court erred in granting Barbuto's motion to

factual allegations in the complaint as true and draw all reasonable inferences from those facts in the light most favorable to [Sorensen]."

dismiss. "The propriety of a trial court's decision to grant or deny a motion to dismiss under rule 12(b)(6) is a question of law that we review for correctness." *Mackey v. Cannon*, 2000 UT App 36, ¶ 9, 996 P.2d 1081 (quotations and citation omitted); *see also* Utah R. Civ. P. 12(b)(6). "[A]n appellate court must accept the material allegations of the complaint as true" and will affirm the trial court's ruling only "if it clearly appears the complainant can prove no set of facts in support of his or her claims." *Mackey*, 2000 UT App 36 at ¶ 9, 996 P.2d 1081 (quotations and citation omitted).

## ANALYSIS

### I. Contract Claim

▮▮▮ ¶ 7 Sorensen asserts that the trial court erred in dismissing his claim that Barbuto breached his contractual duties. Barbuto argues, and the trial court agreed, that Sorensen's contract claim fails because the parties did not enter into a written agreement. Barbuto relies on Utah Code section 78–14–6, which provides:

No liability shall be imposed upon any health care provider on the basis of an alleged breach of guarantee, warranty, contract or assurance of result to be obtained from any health care rendered unless the guarantee, warranty, contract or assurance is set forth in writing and signed by the health care provider or an authorized agent of the provider.

Utah Code Ann. § 78–14–6 (2002). Barbuto contends that, under this section, "Utah law precludes [all] contract claims against a physician absent a written contract signed by the physician or his designated agent." We disagree. The statute is not as broad as Barbuto asserts. It specifically provides that a claim against a physician must be in writing if it is based on a "guarantee, warranty, contract or assurance *of result.*" *Id.* (emphasis added). Sorensen does not contend that Barbuto promised a particular result with his treatment. Rather, he claims that Barbuto

*Mackey v. Cannon*, 2000 UT App 36, ¶ 2, 996 P.2d 1081 (quotations and citation omitted).

breached an implied contract by communicating ex parte with defense counsel in the personal injury action. Therefore, section 78–14–6 is not applicable.

¶ 8 Sorensen's implied contract claim fails, however, on other grounds. Sorensen terminated the physician-patient relationship prior to Barbuto's ex parte communications with defense counsel. *See Ricks v. Budge*, 91 Utah 307, 64 P.2d 208, 211 (1937) (stating that the physician-patient relationship can be terminated "by the discharge of the physician by the patient"). Although Barbuto concedes that "the duty of confidentiality extends beyond the termination of the physician-patient relationship," a breach of this duty cannot be pursued as a breach of an implied contract.

■ ¶ 9 "Courts have immediately recognized a legally compensable injury in ... wrongful disclosure based on a variety of grounds for recovery: public policy; right to privacy; breach of contract; [and] breach of fiduciary duty." *MacDonald v. Clinger*, 84 A.D.2d 482, 446 N.Y.S.2d 801, 802 (N.Y.App. Div.1982) (citing 61 Am.Jur.2d *Physicians, Surgeons and Other Healers* § 169) (other citation omitted). In *MacDonald*, the court discussed whether a party can allege a breach of implied contract based solely upon a doctor's breach of the duty of confidentiality to a former patient. *See id.* at 802–03. A " '[d]octor and patient enter into a simple contract, the patient hoping that he will be cured and the doctor optimistically assuming that he will be compensated.' " *Id.* at 803 (quoting *Hammonds v. Aetna Cas. & Sur. Co.*, 243 F.Supp. 793, 801 (D.Ohio 1965)). In addressing the nature of this contractual relationship, the court stated that " '[a]s an implied condition of that contract ... the doctor warrants that any confidential information gained through the relationship will not be released without the patient's permission.' " *Id.* (quoting *Hammonds*, 243 F.Supp. at 801).

■ ¶ 10 "[F]rom the contractual relationship arose a fiduciary obligation that confidences communicated by a patient should be held as a trust." *Id.* (citing *Hammonds*, 243 F.Supp. at 803). "It is obvious then that this relationship gives rise to an implied covenant which, when breached, is actionable." *Id.* at 804. The *MacDonald* court concluded, however, that "the relationship contemplates an additional duty [of confidentiality] springing from but extraneous to the contract and that the breach of such duty is actionable as a tort." *Id.* The court therefore "dismissed the cause of action for breach of contract." *Id.* at 805; *see also Doe v. Community Health Plan–Kaiser Corp.*, 268 A.D.2d 183, 709 N.Y.S.2d 215, 217 (N.Y.App.Div.2000) ("[T]he duty not to disclose confidential personal information springs from the implied covenant of trust and confidence that is inherent in the physician-patient relationship, the breach of which is actionable as a tort."). We similarly conclude that Sorensen can pursue his breach of confidentiality claim under tort theory, but not under contract theory.

## II.  Tort Claims

### A.  Breach of Professional Duty

¶ 11 Sorensen asserts that Barbuto breached various duties, including fiduciary duties of confidentiality and loyalty, and violated several professional standards.[2] Barbuto contends that he did not breach a duty of care because his actions were protected under Utah Code section 78–24–8(4) and rule 506(d)(1) of the Utah Rules of Evidence. *See* Utah Code Ann. § 78–24–8(4) (1992); Utah R. Evid. 506(d)(1).

¶ 12 This court expressly held in *Debry v. Goates*, 2000 UT App 58, 999 P.2d 582, that rule 506 has superseded section 78–24–8(4). *See id.* at ¶ 24 n. 2 ("[T]he statutory privilege has no further effect. Physician-patient and therapist-patient privileges are now exclusively controlled by [r]ule 506."); *see also Burns v. Boyden*, 2006 UT 14, ¶ 12, 133 P.3d 370 (confirming that rule 506 superseded the

---

2.  Barbuto contends that Sorensen is not entitled to a private right of action for breach of professional standards. Sorensen does not contend in his brief, however, that a private right of action exists. Rather, he asserts that the professional standards contribute to the proper standard of care, citing the Health Insurance Portability and Accountability Act (HIPAA), the American Medical Association's Principles of Medical Ethics, and the Hippocratic Oath.

statutory privilege in section 78–24–8(4)). Therefore, we will address the issue only under rule 506.

¶ 13 Rule 506 defines physician-patient privileges and delineates exceptions:

No privilege exists under this rule:

As to a communication relevant to an issue of the physical, mental, or emotional condition of the patient in any proceeding in which that condition is an element of any claim or defense, or, after the patient's death, in any proceedings in which any party relies upon the condition as an element of the claim or defense[.]

Utah R. Evid. 506(d)(1). Barbuto argues that because Sorensen placed his condition at issue in the personal injury action, Sorensen waived the physician-patient privilege. This exception to the physician-patient privilege, however, is not without limits. *See Debry,* 2000 UT App 58 at ¶ 26, 999 P.2d 582.

¶ 14 In *Debry,* this court held that because the husband had the right to put at issue his wife's mental state as a defense in a divorce proceeding, the exception of rule 506(d)(1) applied. *See id.* at ¶ 25. Based on that exception, the husband solicited an affidavit from the wife's therapist regarding the wife's mental condition. *See id.* at ¶ 5. The therapist submitted his affidavit "without consulting [with the wife] or obtaining her consent." *Id.* "From all that appears, [the therapist] voluntarily furnished an affidavit about his patient's mental condition to her adversary in divorce litigation." *Id.* at ¶ 27. This court held that "under these circumstances, a patient must at least be afforded the opportunity for protection." *Id.* at ¶ 28. "As part of a therapeutic relationship, a doctor or therapist has an obligation to protect the confidentiality of his patients that transcends any duty he has as a citizen to voluntarily provide information that might be relevant in pending litigation." *Id.*

¶ 15 Sorensen and Barbuto both discuss at length whether ex parte communication between a party's physician and the opposing side in pending litigation is a breach of the physician's fiduciary duty of confidentiality. Although *Debry* did not explicitly state that a physician's ex parte communication with the opposing side constitutes a breach of confidentiality, its reasoning readily leads to such a conclusion. The court stated that "[b]efore disclosing confidential patient records or communications in subsequent litigation, a physician or therapist should notify the patient. Even if the communications may fall into [the] exception to the privilege, the patient has the right to be notified of the potential disclosure of confidential records." *Id.* "Such notice assures that the patient can pursue the appropriate procedural safeguards in court to avoid unnecessary disclosure." *Id.*

¶ 16 Consistent with the reasoning of *Debry,* we hold that ex parte communication between a physician and opposing counsel constitutes a breach of the physician's fiduciary duty of confidentiality.[3] *See id.* at ¶¶ 24–29. This holding is consistent with the approach of other courts. *See, e.g., Manion v. N.P.W. Med. Ctr. of N.E. Pa., Inc.,* 676 F.Supp. 585, 593 (D.Pa.1987) ("[T]he prohibition against unauthorized ex parte contacts regulates only how defense counsel may obtain information from a plaintiff's treating physician, i.e., it affects defense counsel's methods, not the substance of what is discoverable. . . . In addition, the prohibition extends beyond the termination of medical treatment and applies with equal force to a plaintiff's current and former treating doctors."); *Petrillo v. Syntex Labs., Inc.,* 148 Ill.App.3d 581, 102 Ill.Dec. 172, 499 N.E.2d 952, 957 (1986) ("We believe . . . that ex parte conferences between defense counsel and a plaintiff's treating physician jeopardize the sanctity of the physician-patient relationship, and, therefore, are prohibited as against public policy."); *Morris v. Consolidation Coal Co.,* 191 W.Va. 426, 446 S.E.2d 648, 651 (1994) ("The patient's implicit consent . . . is obviously and necessarily limited; he does not consent, simply by filing suit, to his physician's discussing his medical confidences

---

**3.** Barbuto argues that ex parte communications are allowed pursuant to the Utah State Bar Ethics Advisory Opinion No. 99–03. However, the Utah State Bar Ethics Advisory Opinion Committee addresses the responsibilities of attorneys, not physicians. Because the issue in this case concerns a physician's duty, the ethics opinion does not apply.

with third parties outside court-authorized discovery methods, nor does he consent to his physician discussing the patient's confidences in an ex parte conference with the patient's adversary." (quotations and citation omitted)); Philip H. Corboy, *Ex Parte Contacts Between Plaintiff's Physician and Defense Attorneys: Protecting the Patient–Litigant's Right to a Fair Trial*, 21 Loy. U. Chi. L.J. 1001, 1002 (1990) ("Recent state court decisions, including several overruling prior precedent, now reflect a strong majority view that condemns ex parte conferences."). Therefore, the trial court erred in dismissing Sorensen's claim for breach of confidentiality.

¶ 17 Sorensen additionally argues that the trial court erred in dismissing his negligence claim. Barbuto contends that Sorensen's negligence claim fails as a matter of law because no duty existed. Because we have determined that a duty exists, the trial court erred in dismissing Sorensen's claim for negligence.

### B. Invasion of Privacy

¶ 18 Sorensen contends that the trial court erred in dismissing his invasion of privacy claim. Barbuto asserts that Sorensen's claim fails as a matter of law because "there was no public disclosure of private information by Dr. Barbuto." In *Shattuck–Owen v. Snowbird Corp.*, 2000 UT 94, 16 P.3d 555, the Utah Supreme Court ruled that "communicating a private fact to a small group of persons ... does not constitute public disclosure." *Id.* at ¶ 12 (quotations and citation omitted). The supreme court concluded that the defendant's disclosure to approximately twelve to thirteen people did not constitute a public disclosure. *See id.* at ¶ 13. According to the complaint in our case, Barbuto disclosed private information to defense counsel and a few of his associates. Thus, Barbuto disclosed the information to "a small group of persons." *Id.* at ¶ 12.

¶ 19 Sorensen contends that there is no specific "body count" required to constitute an invasion of privacy. The *Shattuck–Owen* court specified that "the size of the audience that receives the communication, though an important consideration, is not dispositive of the issues." *Id.* "Rather, the facts and circumstances of a particular case must be taken into consideration in determining whether the disclosure was sufficiently public so as to support a claim for invasion of privacy." *Id.* When considering all the circumstances in this case, we are not persuaded that the disclosure to defense counsel and a few incidental people constitutes a public disclosure.

¶ 20 Sorensen also contends that because he had to depose Barbuto to find out the extent of his inappropriate actions, Barbuto's disclosures became a matter of public record. Barbuto argues in his brief that this cannot constitute an invasion of privacy because of the judicial proceeding privilege. We agree. "To establish the judicial proceeding privilege, the statements must be (1) made during or in the course of a judicial proceeding; (2) have some reference to the subject matter of the proceeding; and (3) be made by someone acting in the capacity of judge, juror, witness, litigant, or counsel." *Debry v. Godbe*, 1999 UT 111, ¶ 11, 992 P.2d 979 (quotations and citation omitted). Under the first prong, Barbuto's statements in the deposition were clearly part of a judicial proceeding. *See id.* at ¶ 14. ("The privilege applies to every step in the proceeding until final disposition." (quotations and citation omitted)). Second, Barbuto's description of his communications with defense counsel was directly related to the purpose of the deposition. And third, Barbuto testified as a witness in the deposition. Because the judicial proceeding privilege applies to the deposition, Sorensen's invasion of privacy claim fails as a matter of law.

### C. Intentional Infliction of Emotional Distress

¶ 21 Sorensen next contends that the trial court erred in dismissing his claim of intentional infliction of emotional distress.

[A]n action for severe emotional distress, though not accompanied by bodily impact or physical injury, [may lie] where the defendant intentionally engaged in some conduct toward the plaintiff, (a) with the purpose of inflicting emotional distress, or, (b) where any reasonable person would

have known that such would result; and his actions are of such a nature as to be considered outrageous and intolerable in that they offend against the generally accepted standards of decency and morality. *Id.* at ¶ 25 (alterations in original) (quotations and citation omitted). "[I]t is for the court to determine, in the first instance, whether the defendant's conduct may reasonably be regarded as so extreme and outrageous as to permit recovery." *Schuurman v. Shingleton,* 2001 UT 52, ¶ 23, 26 P.3d 227 (quotations and citation omitted). The trial court in this case found that Barbuto's actions, as a matter of law, were not "extreme and outrageous." We disagree. Barbuto not only communicated ex parte with defense counsel—Barbuto actually became a paid advocate for Sorensen's adversary. "We conclude that the conduct alleged here . . . meets the threshold necessary to maintain an action for intentional infliction of emotional distress." *Walter v. Stewart,* 2003 UT App 86, ¶ 27, 67 P.3d 1042.

¶ 22 Barbuto also argues that even if his conduct satisfied the extreme and outrageous requirement, the claim is barred by the judicial proceeding privilege. *See Debry,* 1999 UT 111 at ¶ 25, 992 P.2d 979 (applying the judicial proceeding privilege to an intentional infliction of emotional distress claim). Because Barbuto's acts of communicating ex parte with defense counsel and agreeing to be an expert witness for the defense were not legally justified, the judicial proceeding privilege does not apply. *See id.* at ¶ 21; *Brehany v. Nordstrom, Inc.,* 812 P.2d 49, 58 (Utah 1991) (concluding that the "plaintiff can show abuse of [a] privilege by proving that the defendant acted with malice or that the publication of the defamatory material extended beyond those who had a legally justified reason for receiving it").

## CONCLUSION

¶ 23 Barbuto and Sorensen's relationship ended before Barbuto communicated ex parte with defense counsel. However, Barbuto's tort-based duty of confidentiality continued. Further, because a duty existed, the trial court erred in dismissing Sorensen's claim for negligence.

¶ 24 Sorensen's invasion of privacy claim fails because Barbuto's disclosure to defense counsel did not constitute a public disclosure, and his statements in the deposition fall under the judicial proceeding privilege. We conclude, however, that Barbuto's actions meet the threshold to maintain a claim for intentional infliction of emotional distress.

¶ 25 Accordingly, we reverse in part the order granting Barbuto's motion to dismiss, and remand for further proceedings.

¶ 26 WE CONCUR: JUDITH M. BILLINGS and GREGORY K. ORME, Judges.