2025 UT App 161

## THE UTAH COURT OF APPEALS

CHRISTIAN BURKE JACKSON,
Appellant,
*v.*
SPANISH FORK CITY,
Appellee.

Opinion
No. 20240088-CA
Filed November 6, 2025

Fourth District Court, Spanish Fork Department
The Honorable Jared Eldridge
No. 230300096

Nathan E. Burdsal and Hutch U. Fale,
Attorneys for Appellant

Tanner Preece, Attorney for Appellee

JUDGE RYAN D. TENNEY authored this Opinion, in which
JUDGES MICHELE M. CHRISTIANSEN FORSTER and DAVID N.
MORTENSEN concurred.

TENNEY, Judge:

¶1 A jury convicted Christian Jackson of one count of assault, one count of criminal mischief, and three counts of domestic violence in the presence of a child. Jackson filed a notice of appeal from his convictions, but a few weeks later, Jackson filed a voluntary withdrawal of his appeal. This court granted that request and dismissed the appeal. A little over a year after this court's dismissal order, Jackson filed a petition for postconviction relief. The district court dismissed that petition, however, concluding that it was untimely. Jackson now appeals the dismissal of his postconviction petition. For the reasons set forth below, we affirm.

BACKGROUND

*Underlying Criminal Case and Appeal*

¶2     In 2021, Jackson was charged with one count of assault, one count of criminal mischief, and three counts of domestic violence in the presence of a child. Jackson went to trial in February 2022, and a jury convicted him on all five counts.

¶3     On March 28, 2022, the district court conducted a sentencing hearing, and after it was over, Jackson's trial counsel (Trial Counsel) filed a notice of appeal. The next day, the district court signed and entered a written order sentencing Jackson to serve 60 days (30 days in jail and 30 days of home confinement) and placing him on probation for 12 months. A short time later, Trial Counsel filed a motion to appoint appellate counsel, and the district court granted that request on April 4, 2022.

¶4     On April 18, 2022, Trial Counsel filed a motion with this court for voluntary dismissal. The motion for dismissal was titled, "Stipulated Motion for Voluntary Dismissal," and it read as follows:

> PURSUANT TO RULE 37(b) of the Utah Rules of Appellate Procedure, the Appellant, Mr. Jackson, moves to dismiss his appeal.
>
> Mr. Jackson has reached a globalized resolution that involves both of his cases with Spanish Fork City.[1] The resolution involves withdrawing this appeal.

---

1. Jackson had another case with similar charges involving the same victim that was pending at the time.

> There are no costs or fees that have been incurred.
>
> [Counsel] for Spanish Fork City[] has stipulated to this motion.
>
> RESPECTFULLY SUBMITTED this 18th day of April, 2022.

The next day, April 19, 2022, this court entered an order dismissing Jackson's appeal "pursuant to rule 37(b) of the Utah Rules of Appellate Procedure."

¶5      On May 10, 2022, Trial Counsel filed a motion to withdraw from the case, which the district court granted the next day. On May 17, 2022, this court issued the remittitur.

*Postconviction Proceedings*

¶6      On May 17, 2023, Jackson filed a petition for relief under the Post-Conviction Remedies Act. (Moving forward, we'll refer to Jackson's petition as the postconviction petition, and we'll refer to the statute as the PCRA.) In the postconviction petition, Jackson asserted that Trial Counsel had provided ineffective assistance of counsel during the criminal case by mishandling various pieces of evidence and not filing certain motions.

¶7      After Jackson filed his postconviction petition, the district court issued a sua sponte order to show cause giving the parties the opportunity to be heard as to whether the postconviction petition should be dismissed under either the PCRA's statute of limitations or its procedural bars. With respect to the statute of limitations, the district court noted that Jackson had voluntarily dismissed his appeal in the criminal case and had never filed a motion to reinstate his appeal. The court then observed that under the PCRA, a petitioner must file the postconviction petition "within one year after the day on which the cause of action has

accrued." And it further observed that under Utah Code section 78B-9-107(2)(a), a cause of action accrues on "the last day for filing an appeal from the entry of the final judgment of conviction, if no appeal is taken." The court thus suggested to the parties that, in its preliminary view, because Jackson had withdrawn his appeal in the criminal case, it was as if he had not "taken" an appeal—and, as a result, he was required to have filed his postconviction petition within one year from the last day for filing an appeal from the entry of the final judgment of conviction.

¶8 Both parties responded to the court's order to show cause. In his response, Jackson asserted that an appeal had been "taken" and that the cause of action had accrued on the day this court "issued its final decision . . . regarding the appeal"—which, in Jackson's view, was May 17, 2022, the date the remittitur was issued. In its response, Spanish Fork agreed that an appeal was taken, but it asserted that the cause of action accrued on the day on which this court issued the order dismissing Jackson's appeal—April 19, 2022.

¶9 After receiving the parties' responses, the district court issued a written ruling dismissing Jackson's postconviction petition as being time-barred under the statute of limitations. The court noted that in *Hand v. State*, 2020 UT 8, ¶ 4, 459 P.3d 1014, the Utah Supreme Court held that "a voluntary dismissal . . . renders the proceedings a nullity and leaves the parties as if the action had never been brought." From this, the district court ruled that Jackson's "voluntary dismissal of his appeal essentially nullified the notice of appeal and rendered the case in a posture as if the appeal never happened." As a result, and consistent with the position the court had taken earlier in its order to show cause, the court concluded that the entry of the final judgment of conviction occurred on March 29, 2022—i.e., the date on which the district court in the criminal case had signed the written sentence, judgment, and commitment. The district court then observed that 30 days after March 29, 2022, would have been April 28, 2022, which meant that Jackson needed to have filed his postconviction

petition by April 28, 2023. Because Jackson did not file his petition until May 17, 2023, the court concluded that it was untimely. The court therefore dismissed the postconviction petition on that basis and did not reach the question of whether the petition should also be dismissed under the PCRA's procedural bars.

ISSUE AND STANDARD OF REVIEW

¶10 Jackson appeals the ruling dismissing his postconviction petition, arguing that the district court erred in dismissing his petition as untimely under the PCRA. "We review an appeal from an order dismissing or denying a petition for post-conviction relief for correctness without deference to the lower court's conclusions of law. . . . We likewise have held that a district court's interpretation of a statute is a question of law, which we also review for correctness." *Noor v. State*, 2019 UT 3, ¶ 18, 435 P.3d 221 (quotation simplified).

ANALYSIS

¶11 Utah Code section 78B-9-107 sets forth the statute of limitations for a postconviction petition. It states that a "petitioner is entitled to relief only if the petition is filed within one year after the day on which the cause of action has accrued." Utah Code § 78B-9-107(1). Subsection (2) of this statute then states that for purposes of the PCRA, "the cause of action accrues on the later" of several specified dates. Three of these dates are of particular relevance to this appeal:

- Under section 78B-9-107(2)(a), "if no appeal is taken," the cause of action accrues on "the last day for filing an appeal from the entry of the final judgment of conviction."

- Under section 78B-9-107(2)(b), "if an appeal is taken," the cause of action accrues on the date of "the entry of the

decision of the appellate court that has jurisdiction over the case."

- And under section 78B-9-107(2)(c), if no petition for writ of certiorari is filed, the cause of action accrues on "the last day for filing a petition for writ of certiorari in the Utah Supreme Court or the United States Supreme Court."

¶12 The question that drives this appeal is when the cause of action accrued under the procedural history recounted above. Between the district court and the two parties, we have been presented with three different answers to this question.

¶13 First, relying on the principles set forth in *Hand v. State*, 2020 UT 8, 459 P.3d 1014, the district court concluded that Jackson's "voluntary dismissal of his appeal essentially nullified the notice of appeal and rendered the case in a posture as if the appeal never happened." From this, the court reasoned that this case is governed by section 78B-9-107(2)(a), which, again, applies "if no appeal is taken." In the court's view, the cause of action accordingly accrued on "the last day for filing an appeal from the entry of the final judgment of conviction," which would have been April 28, 2022.

¶14 Second, Spanish Fork asserts that, although Jackson had voluntarily dismissed his appeal, an appeal was still "taken," meaning that this case is governed by section 78B-9-107(2)(b). Spanish Fork then contends that "the entry of the decision of the appellate court that has jurisdiction over the case" was this court's dismissal order entered on April 19, 2022. In Spanish Fork's view, this means that Jackson's petition was untimely because it was filed on May 17, 2023.

¶15 Third, like Spanish Fork, Jackson maintains that an appeal was "taken" and that the case is governed by section 78B-9-107(2)(b). But unlike Spanish Fork, Jackson asserts that the "entry of the decision of the appellate court" was the remittitur that was

issued on May 17, 2022, which means that, in his view, his petition was timely filed.

¶16    We agree with Spanish Fork's position. We do so for two reasons.

¶17    First, we agree with Spanish Fork and Jackson that, although Jackson voluntarily dismissed his appeal, an appeal was "taken" for purposes of the PCRA's statute of limitations. Rule 3 of the Utah Rules of Appellate Procedure is entitled, "Appeal as of right—how *taken*." Utah R. App. P. 3 (emphasis added). It provides that "a party may appeal a final order or judgment . . . by filing a notice of appeal with the trial court clerk within the time allowed." *Id.* R. 3(a)(1). There is no question that Jackson did this very thing in this case. Thus, at the outset, an appeal was "taken." But the question then becomes whether Jackson's subsequent dismissal of his appeal nullified that appeal for purposes of the PCRA's statute of limitations.

¶18    As noted, the district court relied on our supreme court's decision in *Hand* for the proposition that the dismissal "essentially nullified" the prior appeal, and we note that the supreme court in *Hand* relied on its own earlier decision in *Barton v. Utah Transit Authority*, 872 P.2d 1036 (Utah 1994). Looking at those cases, we note that on first blush, we do see some potential merit to the district court's view.

¶19    In *Barton*, the plaintiffs had sued Utah Transit Authority and a number of other defendants for various causes of action. *Id.* at 1037. After the district court ruled on various motions raised by both parties, the plaintiffs moved for a voluntary dismissal of their complaint pursuant to rule 41(a) of the Utah Rules of Civil Procedure, and that request was granted. *Id.* at 1037–38. But despite this dismissal, the plaintiffs subsequently appealed, challenging various decisions the district court had made before the dismissal of the case. *Id.* at 1039. In response, the defendants moved to dismiss the appeal, asserting that because

the plaintiffs had voluntarily dismissed their complaint, there was "no final appealable order" from which they could now appeal. *Id.* Our supreme court agreed with the defendants, concluding that a "party who voluntarily dismisses its complaint without prejudice generally has no right to appeal." *Id.* This is so, according to the supreme court, because "a voluntary dismissal without prejudice renders the proceedings a nullity and leaves the parties as if the action had never been brought." *Id.* (quotation simplified).

¶20     In *Hand*, our supreme court applied this same principle to a postconviction petition. There, the petitioner had filed a postconviction petition, but he then withdrew it under rule 41(a) of the Utah Rules of Civil Procedure. *Hand*, 2020 UT 8, ¶¶ 1–2. When the petitioner subsequently filed another postconviction petition, the State argued that this second petition was procedurally barred under Utah Code section 78B-9-106(1)(d) "because it asserted claims that were raised or addressed in any previous request for post-conviction relief or that could have been, but were not, raised in a previous request for post-conviction relief." *Id.* ¶ 3 (quotation simplified). The district court agreed with the State, concluding that although the initial petition "had been withdrawn," it still qualified as a "previous request for post-conviction relief," thus triggering the procedural bar. *Id.* On appeal, the supreme court reversed. Relying on *Barton*, the supreme court concluded that the initial petition did "not count as a previous request for post-conviction relief" because it was voluntarily dismissed under rule 41(a) of the Utah Rules of Civil Procedure and, thus, that it was "as if the action had never been brought." *Id.* ¶ 4 (quotation simplified).

¶21     If *Barton* and *Hand* applied to this appeal, we would agree with the district court that for purposes of the PCRA's statute of limitations, this case would be governed by section 78B-9-107(2)(a). But we don't agree that these decisions apply to the particular question that's before us.

¶22 At a broad level, the question in both *Barton* and *Hand* was about the implications of a plaintiff's decision to dismiss his or her complaint on the plaintiff's ability to subsequently obtain additional substantive review. In *Barton*, the question was whether the dismissal foreclosed the plaintiff's ability to appeal substantive rulings that were made before the dismissal; in *Hand*, the question was about the impact of the petitioner's dismissal on his ability to file a subsequent postconviction petition seeking substantive relief. As noted, *Barton* held (and *Hand* later repeated) that for these purposes, the voluntary dismissal "render[ed] the proceedings a nullity and le[ft] the parties as if the action had never been brought." *Barton*, 872 P.2d at 1039 (quotation simplified); *Hand*, 2020 UT 8, ¶ 4.

¶23 We have no need or ability to question this proposition, but we note that it is premised on something of a legal fiction. In both cases, an initial action *had* originally been brought: the *Barton* plaintiffs had in fact filed a complaint, and the *Hand* petitioner had in fact filed an initial petition. But even so, the appellate courts still decided to treat the proceedings "as if" the action had not been brought. When explaining the rationale for adopting this legal fiction, *Barton* pointed out that "a plaintiff who moves for voluntary dismissal *receives just that which is sought*—the *dismissal* of his [or her] action and the right to bring a later suit on the same cause of action, *without adjudication of the merits*." 872 P.2d at 1039 (emphases added, quotation otherwise simplified). In other words, the idea is that because the plaintiff has voluntarily waived the right to obtain an adjudication on the merits, that waiver has downstream implications on other subsequent aspects of substantive review, such as the plaintiff's ability to appeal various rulings or file another postconviction petition.

¶24 But the question in this appeal is not about a plaintiff's ability to obtain further substantive rulings on allegations that were made in a now-withdrawn complaint. Rather, the question is about timing. As explained by our supreme court, "Statutes of limitations are essentially procedural in nature and establish a

prescribed time within which an action must be filed after it accrues. They do not abolish a substantive right to sue, but simply provide that if an action is not filed within the specified time, the remedy is deemed to have been waived . . . ." *Lee v. Gaufin*, 867 P.2d 572, 575 (Utah 1993). In this sense, at their core, statutes of limitations are understood to be about notice. The idea behind them is that once a certain thing has happened, affected persons or entities are now on notice that a legal clock is running that governs when they are allowed to take some legal action in response. *See, e.g.*, *Crown, Cork & Seal Co. v. Parker*, 462 U.S. 345, 352 (1983) ("Limitations periods are intended to put defendants on notice of adverse claims and to prevent plaintiffs from sleeping on their rights . . . ."); *Noor v. State*, 2019 UT 3, ¶ 42, 435 P.3d 221 (noting that a primary rationale of the relation-back doctrine set forth in rule 15(c) of the Utah Rules of Civil Procedure is to ensure that parties are "given all the notice that statutes of limitations were intended to provide" and that this rule "allow[s] a party to enjoy the benefits (notice) of the statute of limitations" (quotation simplified)); *see also* Wm. Grayson Lambert, *Focusing on Fulfilling the Goals: Rethinking How Choice-of-Law Regimes Approach Statutes of Limitations*, 65 Syracuse L. Rev. 491, 533, 546 (2015) (noting that two important purposes of statutes of limitations are that they (1) "serve[] as a notice to a plaintiff of the time period after which a claim will no longer prevail" and (2) "give[] the defendant fair notice of when a plaintiff can sue").

¶25    This same dynamic holds true in the context of the PCRA's statute of limitations. Once a person has been through a criminal case, the PCRA's statute of limitations governs when the person is allowed to file a postconviction challenge to the underlying conviction. And as explained, that statute of limitations then turns on a series of delineated events—events that, in context, provide notice that the PCRA's clock is now running.

¶26    In light of this, we're not persuaded that the legal fiction that's at the heart of the *Barton*/*Hand* rule should logically be extended to the statute of limitations context. As explained,

Jackson unquestionably did "take" an appeal by filing a notice of appeal from his criminal conviction. When Jackson subsequently dismissed his appeal, he certainly waived his right to obtain substantive review by the appellate court, so the appeal would have appropriately been considered a "nullity" moving forward for purposes of further substantive review. But even so, Jackson could not have been on notice that the clock was now running on his right to file a postconviction petition until one of the delineated events actually occurred. And the logic behind this distinction becomes clear when one considers what would have happened if Jackson had withdrawn his appeal more than 13 months after filing it (say, while briefing or deliberations on the appeal were underway). If the district court's application of the *Barton/Hand* rule were correct—i.e., that because Jackson subsequently withdrew his appeal, the PCRA's statute of limitations began running at the time that final judgment was entered in the criminal case—this would mean that the PCRA's statute of limitations would have expired by operation of law before it had even started to run in real time. In our view, this problem illustrates why the *Barton/Hand* rule should not be extended to questions related to timing and statutes of limitations.

¶27    Because of this, we agree with Jackson and Spanish Fork that, for timing purposes, an appeal was "taken" when Jackson filed it, and we further agree that his voluntary dismissal did not retroactively undo that. As a result, we conclude that the statute of limitations question in this case was governed by section 78B-9-107(2)(b), not section 78B-9-107(2)(a).

¶28    This leads to the second question, which is what constituted the "decision of the appellate court" for purposes of section 78B-9-107(2)(b). In our view, the "decision of the appellate court" in this case was the dismissal order from the court of appeals, not the subsequent remittitur. As our supreme court has explained, a "[r]emittitur is not an order of the appellate court, but merely gives the trial court such jurisdiction as it needs to implement the appellate court's decision in the matter." *Chase*

*Manhattan Bank v. Principal Funding Corp.*, 2004 UT 9, ¶ 9, 89 P.3d 109. In this sense, the "primary effect" of the remittitur "is to provide a clear indication that the trial court has regained jurisdiction to take action consistent with the mandate." *State v. Lara*, 2005 UT 70, ¶ 13, 124 P.3d 243.

¶29   The Utah Rules of Appellate Procedure support this view. Rule 30 states that "[t]he entry of the decision in the court's records constitutes the entry of the court's judgment." Utah R. App. P. 30(e). Rule 36 further provides that "[t]he Court of Appeals will issue a remittitur immediately after the time for filing a petition for writ of certiorari expires." *Id.* R. 36(a)(2). However, the timeliness of a petition for a writ of certiorari is determined by the date "the Court of Appeals' *final decision* is issued, and *not from the date the remittitur* is issued." *Id.* R. 48(a) (emphases added). Thus, under the appellate rules, the date of the remittitur is distinct from (and later than) the date of the appellate court's final decision.

¶30   Given this, we agree with Spanish Fork that the "decision of the appellate court" was the court of appeals' dismissal order that was entered on April 19, 2022. Because Jackson did not file his postconviction petition until May 17, 2023, that petition was untimely.

¶31   As a final matter, we note that after Spanish Fork advanced the above position in its responsive brief, Jackson made two arguments in his reply brief that warrant brief response.

¶32   First, Jackson points out that this interpretation differs from the rationale adopted by the district court in its ruling. This may be true, but it's "well established that we may affirm the judgment appealed from if it is sustainable on any legal ground or theory apparent on the record, even though such ground or theory differs from that stated by the trial court to be the basis of its ruling or action." *Okelberry v. West Daniels Land Ass'n*, 2005 UT App 327, ¶ 11, 120 P.3d 34 (quotation simplified). Here, our ruling

relies on procedural facts that are not contested, as well as our interpretation of statutes and rules. Also, as discussed, our position is consistent with the position advanced by Spanish Fork in the proceedings below and again on appeal. We therefore appropriately rely on this interpretation as our basis for affirmance.

¶33 Second, Jackson invokes Utah Code section 78B-9-107(2)(e), under which the cause of action accrues on "the date on which petitioner knew or should have known, in the exercise of reasonable diligence, of evidentiary facts on which the petition is based." Jackson then asserts that as a factual matter, because Trial Counsel represented him until May 11, 2022, he was prevented from learning the "evidentiary facts" relating to Trial Counsel's alleged ineffectiveness until some future point, thereby tolling the statute of limitations. But the ineffective assistance claims that Jackson asserted in his petition were largely about evidentiary and motion issues that occurred in Jackson's presence, so we're skeptical of Jackson's assertion that section 78B-9-107(2)(e) applies. Regardless, Jackson did not assert this position in his opening brief, so it's too late for him to do so for the first time in his reply brief. *See State v. Lorenzo*, 2015 UT App 189, ¶ 12, 358 P.3d 330 ("It is well settled that issues raised by an appellant in the reply brief that were not presented in the opening brief are considered waived and will not be considered by the appellate court." (quotation simplified)). We therefore decline to reverse on this basis.

## CONCLUSION

¶34 For the foregoing reasons, we affirm the district court's dismissal of Jackson's postconviction petition.

———————